**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Anthony Boyce (#R-52162),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14 C 0418** |
| | ) | |
| **Marlon McKnight, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Anthony Boyce, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Boyce claims that Defendants, correctional officials and health care providers who work at the Stateville Correctional Center, violated Boyce's constitutional rights by engaging in excessive force against him and acting with deliberate indifference to his medical needs. More specifically, Boyce contends that Defendants unjustifiably exposed him to pepper spray and then denied him medical care following the purported exposure.

All of the Defendants, both Dr. Saleh Obaisi, a medical professional employed by Wexford Health Sources Inc. (hereafter "Obaisi"), and the correctional staff (hereafter, "the IDOC Defendants"), have filed motions for summary judgment pursuant to Federal. R. Civ. P. 56(a). For the following reasons, the Court grants Obaisi's motion in its entirety and grants in part and denies in part the IDOC Defendants' motion .

# BACKGROUND

## I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Under Local Rule 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. L.R. 56.1(a)); *see also* Fed. R. Civ. P. 56(c). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran, Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting N.D. Ill. L.R. 56.1(b)(3)(B)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (citing N.D. Ill. L.R. 56.1(b)(3)(C)). A court may consider true any uncontested fact in the movant's Rule 56.1 Statement that is supported by the record and is not addressed by the opposing party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *see also* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(b)(3)(C).

"District courts are entitled to expect strict compliance with Rule 56.1." *Ciomber*, 527 F.3d at 643 (citations and internal quotation marks omitted). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Greer v. Bd. of Educ. of City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006) ("even

*pro se* litigants must follow rules of civil procedure'"). Moreover, Boyce is an experienced litigant, having brought at least nine other lawsuits here, *see Boyce v. Godinez,* No. 12 C 3840; *Boyce v. Carter,* No. 12 C 5372; *Boyce v. Gray,* No. 13 C 2967; *Boyce v. Obaisi,* No. 13 C 5746; *Boyce v. Martella,* No. 13 C 6526; *Boyce v. Johnson,* No. 13 C 6832; *Boyce v. Lemke,* 14 C 0108; *Boyce v. Madigan,* No. 15 C 7580; and *Boyce v. Madigan,* No. 15 C 9268.

As contemplated by Local Rule 56.1, Obaisi and the IDOC Defendants each filed a statement of uncontested material facts supporting summary judgment in their favor. (Obaisi Stmt. of Fact, R. 99, ("Obaisi SOF"); IDOC Defs. Stmt. of Fact, R. 114 ("IDOC SOF").) All Defendants also filed and served on Boyce a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. (R. 97, 115.) The Court also has previously explained to Boyce the requirements of the local rule. *See Boyce v. Carter,* No. 12 C 5372, 2014 WL 4436384, at *1-2 (N.D. Ill. Sept. 8, 2014).

Boyce filed several documents, which consist of multiple sub-parts, in response to Defendants' motions. As is relevant here, Boyce filed responses to both sets of Defendants' statements of uncontested fact. ("Plaintiff's Opposition to Obaisi Undisputed [sic] Statement of Facts," R. 106 at 1-5 ("Pl. Resp. Obaisi SOF"); "Plaintiff's Opposition to Defendants Lemke, Barnett, Brooks, McKnight Statement of Facts," R. 121 at 7-11 ("Pl. Resp. IDOC SOF").) Plaintiff also submitted statements of additional facts. (Pliff Additional Set of Material Facts [as to Obaisi], R. 106 at 5-7 ("Pl. Obaisi SOAF"); Pliff Additional Set of Material Facts [as to IDOC Defendants], R. 121 at 12-14 ("Pl. IDOC SOAF").) Boyce also submitted two declarations (R. 108 and R 121 at 27-33) and approximately 80 pages of exhibits (R. 104 at 7-53 and R. 121 at 34-64).

In addition, Boyce admits many of Defendants' uncontested facts. He admits the facts contained within paragraphs 2-3, 5-6, 11-15, 19-20, and 22 of Obaisi's statements of uncontested fact. (Pl. Resp. Obaisi SOF.) As to the IDOC Defendants' statement of uncontested facts, Boyce admits the facts contained in paragraphs 1, 6, 8, 10-11, 14, and 19. (Pl. Resp. IDOC SOF.) The Court therefore takes these facts as true.

Boyce purports to deny the remainder of Defendants' uncontested facts. Boyce, however, cannot create genuine issues of material fact by relying upon legal arguments, conclusions or suppositions (e.g., Pl. Resp. Obaisi SOF ¶¶ 9-10, 16, 39-52; Pl. Resp. IDOC SOF ¶¶ 9, 18, 20), which do not constitute "facts." *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Almy v. Kickert Sch. Bus Line, Inc*., No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs*., 233 F.3d 524, 529 (7th Cir. 2000)). Further, Boyce may not create genuine issues of material fact through responses that lack specificity and respond generally to multiple statements of fact without being responsive to all material facts raised by Defendants. (*See, e.g*., Pl. Resp. Obaisi SOF ¶¶ 24-32, 34, 42-53.)

The Court also will disregard denials that conflict with Boyce's sworn deposition testimony. "[L]itigants 'cannot create sham issues of fact with affidavits that contradict their prior depositions.'" *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (quoting *Lorillard Tobacco Co. v. A & E Oil, Inc*., 503 F.3d 588, 592 (7th Cir. 2007)). Further, the Court will not consider Boyce's disagreements with Defendants' factual assertions where he states only that a fact is "irrelevant" or "immaterial" or where he fails to provide a record

4

citation to contradicting evidence. (*See, e.g.*, Pl. Resp. Obaisi SOF ¶¶ 17-18, 21; Pl. Resp. IDOC SOF ¶¶ 12-13, 16.) Nor may Boyce, without demonstrating some source of contrary evidence or personal knowledge of the events, counter Defendants' uncontested facts within their knowledge. *See* Fed. R. Evid. 602. Boyce cannot, for example, counter Obaisi's statements that as the Medical Director of Stateville, he does not review written requests from inmates for medical attention and his statement that he documents his encounters with inmates, unless Boyce has an evidentiary foundation for disputing those representations. (Pl. Resp. Obaisi SOF ¶¶ 8, 39; Pl. Resp. IDOC SOF ¶ 22.) In addition, Boyce cannot counter Correctional Officer Brooks' statements that his pepper spray accidentally discharged on his hip without an evidentiary foundation for his dispute. (Pl. Resp. IDOC SOF ¶ 18.)

As to the facts Boyce seeks to add to the record to defeat Defendants' motions, *see* Rule 56.1(b)(3)(C), he has not followed the Rule in several ways. First, Plaintiff improperly inserted additional facts into his responses to Defendants' Local Rule 56.1(a)(3) statements. (*See, e.g.*, Pl. Resp. Obaisi SOF ¶¶ 8-10, 17-18, 23-33, 35-52; Pl. Resp. IDOC SOF ¶¶ 9, 12-13, 15-18, 22.) Such statements must be ignored, even where supported by supporting record citations, because the Rule requires that additional facts be raised through a statement of additional facts under Local Rule 56.1(b)(3)(C). Second, Boyce submits additional facts throughout his legal briefs. But "facts submitted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion." *Beard v. Don McCue Chevrolet, Inc.*, No. 09 C 4218, 2012 WL 2930121, at *5 (N.D. Ill. July 18, 2012). Third, the Court will not consider Boyce's statements of additional facts as raising additional facts because Boyce's statements consist not of factual assertions but of a series of open-ended legal questions beginning with "whether," *e.g.*,

"whether Obaisi review pliff's letters and grievances or any other request in relation to this case," (Pl. Obaisi SOAF ¶¶ 2), "whether Brooks accidentally discharged the chemical agent on 10-13-13 in connection with this case at the gym"; and "whether plaintiff had a serious medical need in this case." (Pl. IDOC SOAF ¶¶ 6, 10.)

Where Boyce has pointed to evidence contrary to Defendants' statements of fact in his responses to those statements, the Court will consider that evidence. The Court will, in general, incorporate Plaintiff's factual assertions to the extent they provide additional facts relevant to the Court's analysis, are supported by record evidence, or are such that Plaintiff properly can testify to them at trial. The Court further will rely upon Plaintiff's references to exhibits where they are relevant to the Court's analysis and may be admissible at trial. The Court will not, however, dig through the record to identify disputed issues of fact. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies."). With these guidelines established, the Court turns to the facts of this case.

## II.     Relevant Facts

### A.     Parties

Plaintiff Anthony Boyce is an IDOC inmate, who is serving a life sentence for murder and has also been convicted of attempted solicitation of murder. (Obaisi SOF ¶ 1); *see also People v. Boyce*, 2013 IL App (1st) 102318-U, ¶¶ 1, 4 (Ill. App. 2013), *aff'd* 2015 IL 117 (Feb. 2015).

During the relevant time period, Boyce was incarcerated at Stateville Correctional Center ("Stateville"), (IDOC SOF ¶ 1), and Defendants were officers or employees of IDOC or Wexford

Health Sources, Inc.   Defendant Michael Lemke was Stateville's warden at all times relevant to this lawsuit.   (IDOC SOF ¶ 4.)   The remaining IDOC Defendants worked at Stateville: Defendants Marlon McKnight and Joey Brooks were both correctional officers, and Defendant Shanal Barnett was a medical technician.   (IDOC SOF ¶¶ 3-5.)

Wexford employed Defendant Saleh Obaisi, M.D. as a physician.   (Obaisi SOF ¶ 3.)   In addition, Obaisi served as the Medical Director at Stateville.   (Obaisi SOF ¶ 3.)

### B.     Incident Underlying Boyce's Claims

Unless otherwise noted, the following facts are undisputed.   On October 13, 2013, Boyce, along with other inmates, attended a Christian religious service held in Stateville's gymnasium. (IDOC SOF ¶ 7; R. 121, Pl. Decl., ¶ 1.)   The gymnasium is large enough that it contains a basketball court with a hoop on both ends.   (IDOC SOF ¶ 10.)

At some point during the service, Boyce's chest and throat began to hurt because pepper spray had been released within the gymnasium.   (IDOC SOF ¶ 11; Obaisi SOF ¶ 13.)   Boyce did not see the chemical agent being released, and he does not know how far he was from the location where it was dispensed.   (IDOC SOF ¶ 15; Obaisi SOF ¶ 14, 16.)   Boyce also does not know for how long someone sprayed the pepper spray.   (Obaisi SOF ¶ 15.)

Defendant Brooks testified via affidavit that he escorted a line of inmates into the gymnasium to attend the religious service.   (IDOC SOF ¶ 8.)   After securing the inmates in the gym, Brooks decided to remove his pepper spray from its carrying case on his equipment belt because it was caught and stuck against his protective vest.   (IDOC SOF ¶ 9.)   One of Brooks' supervisors subsequently called him back to the gymnasium, at which time Brooks learned that the inmates had complained of coughing.   (IDOC SOF ¶ 17.)   At that point, Brooks discovered

that the spray area of his pepper spray can and the hip area on his jumpsuit were both wet.   (IDOC SOF ¶ 18.)   He determined that the pepper spray accidentally discharged on his hip.   (IDOC SOF ¶ 8.)

Boyce testified that after the pepper spray was released, he was permitted to go to a bathroom within the gymnasium, where he washed the chemicals off his face, nose, and mouth. (IDOC SOF ¶ 16; Obaisi SOF ¶ 18.)   IDOC correctional personnel then contacted the health care unit ("HCU"), and Defendant Barnett came to the gymnasium.   (IDOC SOF ¶ 19.)   Boyce testified that Barnett performed a physical examination on him while in the gymnasium.   (Obaisi SOF ¶ 22.)   Boyce has not pointed the Court to any testimony that describes what he told Barnett about his condition during that examination.   Boyce did testify that Barnett told him that she would either call him to the Health Care Unit ("HCU") later that day, or advise Defendant Obaisi about the incident. (Obaisi SOF ¶ 22.)

Boyce testified via affidavit that he spoke with Defendant McKnight around the time he went to the gymnasium's bathroom to wash off the chemicals, and Boyce asked him why someone has released the pepper spray. (R. 121, Pl. Decl. ¶ 2.)   Boyce testified that McKnight responded that "this was planned for a long time", that the inmates had been "talking this god shit", and that if there were a god, he would have intervened and "stopped me from spraying the chemical agent". (R. 121, Pl. Decl. ¶ 2.)   He also allegedly told Boyce that "the religious shit seems futile".   (R. 121, Pl. Decl. ¶ 2.)   In addition, Boyce testified at his deposition that McKnight told Boyce that he brought his own pepper spray to the gymnasium and that he bragged to Boyce about spraying it.   (R 114 at Ex. B, Boyce Dep. at 55: 14-19.)   Boyce also testified that after the pepper spray was released, Lemke arrived smiling at the gym.   (R. 121, Pl. Decl. ¶ 2.)

8

### C.     Follow-Up from the Incident

#### 1.     Grievances

Boyce filed two emergency grievances within the prison regarding the October 13, 2013 incident – one dated October 14, 2013 and the other dated October 24, 2013.   (Obaisi SOF ¶¶ 42, 48.)   In both grievances, Boyce complained that the use of the pepper spray rose to excessive force and was done in purported retaliation for exercising his religion.   (Obaisi SOF Ex. C at 20 and 40.)   Boyce also complained that certain officials did nothing to stop it.   (Obaisi SOF Ex. C at 20 and 40.)   He sought compensation for what he perceived as retaliation.   (Obaisi SOF Ex. C at 20 and 40.)   The first grievance, but not the second, also stated that he wanted "to see a doctor". (Obaisi SOF Ex. C at 20 and 40.)   Defendant Lemke denied both grievances as non-emergent. (Obaisi SOF ¶¶ 44, 50.)   Boyce attempted to appeal the first grievance, but never received a final response from the appeal board because Boyce did not respond to the board's request to furnish additional information.   (Obaisi SOF ¶¶ 45-47.)   Boyce does not remember if he appealed the second grievance.   (Obaisi SOF ¶ 51.)

#### 2.     Medical Care

Neither Barnett nor any other member of Stateville's medical staff advised Obaisi of any condition of Boyce's resulting from the exposure to pepper spray.   (Obaisi SOF ¶ 23.)     Boyce himself, following the incident, submitted medical request slips, in the form of letters addressed to Dr. Obaisi dated October 17, 19, and 24, 2013, asking to see a doctor as a result of the pepper spray exposure.   (Obaisi SOF ¶ 23 and Ex. C at 24-26.)   In the letters, Boyce stated that he was having "trouble breathing" or that his throat and chest "hurt" due to being in the gymnasium where pepper spray was released, and he asked to go to the HCU.   (Obaisi SOF Ex. C at 24-26.)   Boyce

testified at his deposition that the exposure to pepper spray also aggravated a "cardiovascular condition" that he had previously sustained as a result of a fire in his cell, (IDOC SOF ¶ 11), but his letters to Obaisi do not raise this complaint. (Obaisi SOF Ex. C at 24-26.)

Obaisi testified via affidavit that, as Stateville's medical director, he does not personally review the inmates' written requests for medical attention. (Obaisi SOF ¶ 8.) Instead, IDOC medical technicians or administrative personnel screen the requests and decide what action, if any, to take. (Obaisi SOF ¶ 8.) In keeping with that practice, Obaisi testified that he did not review any of Boyce's letters or grievances regarding the October 13, 2013 incident at any time. (Obaisi SOF ¶ 36.) He testified that the first time he learned of Plaintiff's alleged medical condition resulting from the incident was when Boyce filed the present lawsuit. (Obaisi SOF ¶ 8.)

Boyce alleged in his complaint and also testified at his deposition that he saw Obaisi "in passing" in a non-clinical setting sometime in January or February 2014. (Obaisi SOF ¶ 33.) During the conversation that ensued, according to Boyce, Obaisi told him that Barnett never told him about the October 13, 2013 incident. (Obaisi SOF ¶ 35.) Boyce also testified that Obaisi made disparaging remarks about Americans and non-Muslins during this interaction. (Pl. Resp. Obaisi SOF ¶ 40 and R. 108, Pl. Decl. ¶ 3.) Although not alleged in his complaint, Boyce stated in his affidavit that he had a conversation with Obaisi in "approximately October 2013", where Obaisi told him that he had received Boyce's letters and grievances. (R. 108, Pl. Decl. ¶ 5.)

Stateville medical staff saw Boyce on at least seven occasions between the October 13, 2013 incident in the gymnasium and his transfer to Pontiac Correctional Center at the end of February 2014, namely, November 24, 2013; November 28, 2013; January 30, 2014; January 24, 2014; January 25, 2014; February 13, 2014; and February 20, 2014. (Obaisi SOF ¶¶ 24-30.) His

medical records from these occasions do not indicate any complaints regarding his exposure to pepper spray or the October 13, 2013 incident. (Obaisi SOF ¶¶ 24-30.) Of these visits, the first, on November 24, 2013, was with Dr. Obaisi. (Obaisi SOF ¶ 25.) At that appointment, Boyce complained of dryness in his nose and mouth for the past year, and Obaisi performed an exam, ordered laboratory testing, and prescribed Boyce nasal saline spray. (Obaisi SOF ¶ 25.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See, e.g., Wilson v. Cook County*, 742 F.3d 775, 779 (7th Cir. 2014); *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936-37 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-23). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) (citations omitted). A genuine dispute as to any material fact exists if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248 (1986); *Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014).

## ANALYSIS

Boyce raises two Eighth Amendment claims in this action: (1) a claim of excessive force against Lemke, Brooks, and McKnight due to the use of pepper spray at the gymnasium on October 13, 2013; and (2) a claim of deliberate indifference against Barnett and Obaisi based on his breathing problems allegedly caused by the pepper spray exposure. The Court addresses each claim in turn below.

## I.     Excessive Force (the IDOC Defendants)

As to Lemke and Brooks, no dispute exists as to any material fact pertaining to Boyce's excessive force claim. As to McKnight, however, Boyce has created such a factual dispute. Accordingly, the Court grants summary judgment in favor of Lemke and Brooks, but denies the IDOC Defendants' summary judgment motion with respect to McKnight.

### A.     The Law

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy,* 559 U.S. 34, 40 (2010). The core requirement for an Eighth Amendment excessive force claim is that the defendant used force not "in a good-faith effort to maintain or restore discipline," but "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Hendrickson v. Cooper,* 589 F.3d 887, 890 (7th Cir. 2009).

The use of chemical agents such as pepper spray is not a violation of the Eighth Amendment in and of itself because they can be used in limited quantities when it is reasonably

necessary to subdue or maintain control over an inmate.   *Soto v. Dickey,* 744 F.2d 1260, 1270–71 (7th Cir. 1984).   The use of such an agent violates the Eighth Amendment only if it is used "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.*

## B.    Lemke

Defendant Lemke is entitled to summary judgment in his favor due to his lack of personal involvement in the October 13, 2013 incident.   Section 1983 is premised on the wrongdoer's personal responsibility.   Therefore, an individual cannot be held liable in a Section 1983 action unless he caused or participated in an alleged constitutional deprivation.   *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted).   The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983.   *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008).   To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."   *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Boyce has failed to submit evidence from which a reasonable jury could conclude that Lemke was personally involved in the use of pepper spray in the gymnasium on October 13, 2013. According to his deposition testimony, Boyce claims that Lemke directed his staff to use excessive force at the religious service.   When asked what evidence he had to support that assertion, Boyce testified, "I'll refer you to the complaint".   Boyce's complaint, in turn, merely states – without elaboration – that Lemke walked into the gymnasium smiling and "condoned" the action of spraying the chemical agent.   Lemke's alleged smile does not infer his approval of the use of

13

pepper spray.   Boyce has failed to identify any evidence to suggest that Lemke even knew at the time he entered the gym that someone had released any pepper spray.   Furthermore, the blanket, conclusory assertion that Lemke "condoned it" does not satisfy Boyce's burden in response to the IDOC Defendants' summary judgment motion to submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial."   *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010).   "Summary judgment is the 'put up or shut up' moment in a lawsuit." *Id.* (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)).   Boyce has not "put up" any evidence tending to show Lemke's personal involvement.   The Court therefore grants summary judgment in favor of Defendant Lemke and dismisses him from this action.

### C.   Brooks

Officer Brooks is entitled to summary judgment because no reasonable jury could conclude that he acted with the malicious intent required to prove a constitutional violation.   Boyce has failed to introduce any evidence regarding Officer Brooks.   He does not suggest that he saw Brooks spray a chemical agent.   Indeed, Boyce admits that he did not see the act of spraying occur. He also does not suggest that Brooks told him or any other inmates that he sprayed them.   The IDOC Defendants introduced the only evidence in the case regarding Officer Brooks: his testimony that he accidentally disbursed the pepper spray after attempting to remove the stuck spray capsule from his vest, and that he discovered his accident after his supervisor alerted him that the inmates were coughing.   Accidental uses of force – even if negligent – do not run afoul of the Eighth Amendment and are not actionable in a Section 1983 claim.   Broadly speaking, Section 1983 does not punish negligence.   *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).   In particular, the

use of force in a correctional setting is constitutionally infirm only if applied maliciously and with the intent to harm.   *Hudson,* 503 U.S. at 7; *Hendrickson,* 589 F.3d at 890.

As the party with the burden of proof, Boyce has to present evidence that, if believed by the trier of fact, would support a finding that Brooks violated his constitutional rights.   *See Sow v. Fortville Police Dep't,* 636 F.3d 293, 300 (7th Cir. 2011) (citing *McAllister v. Price,* 615 F.3d 877, 881 (7th Cir. 2010)).   Here Brooks' testimony that he accidentally disbursed the pepper spray, however, is undisputed.   Boyce appears to believe that his testimony regarding his conversation with McKnight creates a disputed issue of fact with respect to Brooks.   It does not. Specifically, Boyce testified that McKnight told him that "[the pepper spraying] was planned for a long time", that the inmates had been "talking this god shit", and that if there were a god, he would have intervened and "stopped me from spraying the chemical agent".   He also testified that McKnight bragged to him about spraying his capsule of pepper spray.   Even assuming that McKnight's alleged comments are admissible against Brooks, rather than hearsay, his comments only serve to *exculpate* Brooks by demonstrating that the pepper spray did not come from him. Boyce does not contend, nor is there any evidence to suggest, that Brooks and McKnight conspired or acted in concert.   The Court therefore grants summary judgment in favor of Defendant Brooks and dismisses him from this action.

###    D.    McKnight

The Court nonetheless denies the IDOC Defendants' motion for summary judgment with respect to McKnight.   The IDOC Defendants argue that the Court should grant summary judgment for Officer McKnight because there is no evidence that he was involved in Brooks' accidental disbursement of pepper spray.   Viewing the evidence in the light most favorable to

Boyce, however, Boyce has raised genuine disputes of fact that the Court cannot resolve at summary judgment on the material issue of whether McKnight pepper sprayed the inmates, including Boyce, in the gymnasium maliciously and for the purpose of causing them harm. Boyce's testimony that McKnight told him he sprayed the inmates because of anti-religion sentiments creates that dispute. As described above, Boyce testified that McKnight bragged to him that he was the one who sprayed the pepper spray and that god did not intervene to stop him. The testimony is admissible against McKnight under Federal Rule of Evidence 801(d)(2). *See* Fed. R. Evid. 801(d)(2)(A) (excluding from the hearsay rule statements made by a party opponent that are offered against that party). Moreover, if a jury were to credit what Boyce says McKnight told him, the jury could potentially find a constitutional violation because McKnight's alleged statements tend to show an intent to harm absent a penological purpose. *See Hudson,* 503 U.S. at 7; *Hendrickson,* 589 F.3d at 890.

Contrary to the IDOC Defendants' suggestion, Brooks' testimony that he released the pepper spray accidentally does not establish that McKnight is entitled to summary judgment. Although Brooks is exculpated of a constitutional violation no matter whose version of events – Boyce's or Brooks' – is believed, the same does not hold true for McKnight. On summary judgment, the Court cannot judge the witnesses' credibility and determine whose testimony is true. *See Chavez v. Illinois State Police*, 251 F.3d 612, 634 (7th Cir. 2001). The fact that Boyce's testimony is "self serving" (as is Brooks') does not resolve the matter. Indeed, the Seventh Circuit has repeatedly explained that one acceptable type of evidence that may create a genuine issue of fact is the plaintiff's own affidavit, as long as it otherwise contains information that would be admissible if he were testifying directly. There is nothing suspect about the fact that such affidavits

are normally "self-serving." *See Hill v. Tangherlini,* 724 F.3d 965, 967 & n. 1 (7th Cir. 2013); *Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003); *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). The Court therefore denies summary judgment as to Officer McKnight on Boyce's claim of excessive force.

## II.     Deliberate Indifference to Boyce's Medical Needs – Barnett and Obaisi

Boyce claims that Barnett was deliberately indifferent to his breathing problems because she did not refer him to a doctor after examining him in the gymnasium. In addition, Boyce claims that Obaisi was deliberately indifferent to his condition because Obaisi allegedly ignored his requests for treatment. With respect to both of these claim, there is no genuine dispute as to any material facts. The Court grants summary judgment as to both Defendants Obaisi and Barnett, and dismisses them from this lawsuit.

### A.   Exhaustion

Defendant Obaisi has shown that Boyce failed to exhaust administrative remedies prior to filing suit. (The IDOC Defendants have not sought summary judgment on grounds of non-exhaustion.) Prisoners must exhaust their administrative remedies before they file suit in federal court. 42 U.S.C. § 1997(e)(a); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The exhaustion requirement applies to deliberate indifference claims. *Porter*, 534 U.S. at 532. Defendants bear the burden of pleading and proving that a prisoner failed to exhaust a claim. *Turley v. Rednour*, 729 F.3d 645, 649-50 (7th Cir. 2013).

The Prisoner Litigation Reform Act requires the exhaustion of "administrative remedies as are available." 42 U.S.C. § 1997e(a). An inmate must use "'all steps that the agency holds out,'" and he must "do[] so properly (so that the agency addresses the issues on the merits).'" *Woodford*

*v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

"The benefits of exhaustion can be realized only if the prison grievance system is given a fair

opportunity to consider the grievance." *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011).

Because "the primary purpose of a grievance is to alert prison officials to a problem," *Maddox v.*

*Love*, 655 F.3d 709, 722 (7th Cir. 2011) (internal citations and quotation marks omitted), the

prisoner's grievance must include enough information to alert the prison officials of the wrong for

which the prisoner seeks redress. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Therefore,

"[t]he subject matter of the exhausted grievance must actually relate to the actions, policies, or

procedures at issue in the case". *See Bruce v. Ghosh*, No. 11-CV-3138, 2015 WL 1727318, at *5

(N.D. Ill. Apr. 13, 2015). Where a grievance does not notify prison officials as to the nature of

the claim later litigated, the Seventh Circuit and courts in this district have repeatedly found a

failure to exhaust even if the prisoner abided by the prison's procedural requirements for

exhaustion. *See, e.g., Stites v. Mahoney,* 594 F.App'x 303, 305 (7th Cir. 2015); *Dye v. Kingston*,

130 F. App'x 52, 55-56 (7th Cir. 2005); *Roach v. Edwards*, No. 14 C 2198, 2015 WL 5177570, at

*1 (N.D. Ill. Sept. 3, 2015); *Harris v. Hammil,* 2013 WL 5435214, at *6 (N.D. Ill. Sept. 30, 2013).

Obaisi argues that Boyce failed to exhaust his administrative remedies because he did not

name Obaisi in any of the grievances that he filed, nor did any of his grievances relate to the subject

matter of his complaints against Obaisi. The Court agrees with Obaisi's latter contention

regarding the subject matter of the grievances. As explained below, Boyce failed to

administratively grieve any complaint that would have alerted prison officials to the nature of his

deliberate indifference claim and thereby have given them an opportunity to resolve it. The Court

has not factored, though, Boyce's failure to specifically name Obaisi in his grievances. The

Seventh Circuit has held that a prisoner is not required to name a would-be defendant in his grievance in order to exhaust as long as the grievance provides proper notice of the nature of the wrong and need for corrective action. *See Maddox v. Love,* 655 F.3d 709, 721 (7th Cir. 2011); *see also Young v. Wexford Health Sources,* No. 10 C 8220, 2012 WL 621358, at *9-10 (N.D. Ill. February 14, 2102).

The Court concludes that neither of the two grievances that Boyce submitted regarding the October 13, 2013 incident provided notice that a medical professional knowingly refused to treat his allegedly lingering breathing problems. Instead, in both grievances, Boyce complains that the use of force was excessive and in purported retaliation for exercising his religion. Boyce also complains that certain officials did nothing to stop it. The only mention of anything medical in either grievance is that in the "Relief Requested" section of his first grievance, which he submitted just one day after the incident, Boyce wrote that in addition to seeking compensation for retaliation, he wanted "to see a doctor". His second grievance, dated a week after the incident, sought only compensation for retaliation and made no similar request for medical attention.

This fleeting request to see a doctor one day after the incident did not notify prison staff of Boyce's complaint that Obaisi was later deliberately indifferent to his alleged lingering condition. Neither grievance indicates any ongoing condition, describes any symptoms, or suggests that any doctor ignored him or denied him medical attention. Boyce never filed a grievance complaining that any medical professional knowingly refused to treat him. At the time Boyce submitted his first grievance with the request to see a doctor, Boyce does not suggest that Obaisi even knew of Boyce's symptoms or knew that he (Boyce) wanted to see him. Instead, Boyce contends that Obaisi learned about his alleged complaints and request for a doctor through the letters he sent

him, the earliest of which is dated three days after the first grievance, on October 17, 2013. Notably, in Boyce's second grievance – the one out of the two that he submitted after Obaisi allegedly gained the requisite knowledge – Boyce did not renew his request for a doctor, despite renewing all his other complaints and requests from the first grievance.

Viewing the evidence in the light most favorable to Boyce, the grievances cannot fairly be construed to have notified the prison of Boyce's complaint that prison medical professionals knowingly refused to treat him for the allegedly lingering effects of pepper spray. Because prison officials never had an opportunity to address Boyce's medical claim, summary judgment for Obaisi based on failure to exhaust administrative remedies is warranted. *Compare Harris,* 2013 WL 5435214 at *6 (court found failure to exhaust when prisoner grieved series of events regarding his medical care within a given set of dates, did not allege an ongoing deficiency in medical care, and defendant did not treat prisoner until after the time period at issue in grievances); *Dye,* 130 F. App'x at 55-56 (plaintiff did not exhaust free exercise of religion claim because his grievance did not alert officials to the "nature of the wrong" when his complaint that his Bible was taken was merely part of a "laundry list" description of other stolen property such as deodorant and shoes); *Roach,* 2015 WL 5177570 at *1 (prisoner did not exhaust excessive force claim where his grievance complained only that he was falsely charged with a rules violation that led to the purported use of force against him, but did not also complain that the officer's force was excessive).

### B.   The Merits

The Court now turns to the merits of Boyce's medical deliberate indifference claims for the sake of completeness. *See Padilla v. Bailey,* 09 C 8068, 2011 WL 3045991, at *5 (N.D. Ill.

Jul. 25, 2011).

## 1. The Law

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Medical deliberate indifference claims have an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1970); *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 689 (7th Cir. 2012).

A medical need is objectively serious when "the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). Indications of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997); *see also Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). "Failure to 'dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not ... violate the Constitution.'" *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

With respect to the subjective component of the deliberate indifference test, a plaintiff must show that the defendant in question was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Prisoners are entitled to "adequate medical care," not "unqualified access to healthcare." *Holloway*, 700 F.3d at 1073 (internal quotations omitted).

### 2. Application

Both Obaisi and Barnett are entitled to summary judgment because Boyce has not demonstrated that he suffered from a serious medical condition of which they were aware that would have necessitated treatment by a doctor. Boyce has failed to demonstrate an objectively serious medical need under the above-described standards set forth by *Estelle* and the Seventh Circuit. To clarify, numerous courts within the Seventh Circuit have previously concluded that conditions similar to Boyce's are not constitutionally actionable. The Seventh Circuit, applying its rule that an undiagnosed condition is objectively serious only if a lay person would perceive it as obviously requiring the care of a doctor, has held that "breathing problems" and "chest pains" from exposure to inhalants are "relatively minor" and cannot support a deliberate indifference claim. *See Oliver v. Dean*, 77 F.3d 156, 160–61 (7th Cir. 1996) (concluding at summary judgment that an asthmatic prisoner failed to demonstrate that he had a serious medical need based on evidence that his exposure to second-hand smoke aggravated his asthmatic condition causing him to suffer chest pains, difficulty in breathing, dizziness, nausea and other signs of discomfort); *see also Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (concluding at summary judgment that plaintiff's complaints of "breathing problems, chest pains, dizziness, sinus problems,

headaches and a loss of energy" due to repeated exposure to second-hand cigarette smoke did not constitute a serious medical condition). Moreover, multiple district courts applying the Seventh Circuit's standards have also specifically held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions. *See, e.g., Rivera v. MacAdory*, No. 96 C 4674, 1997 WL 17811, at *3 (N.D. Ill. Jan. 16, 1997) (explaining that "lingering unpleasant effects of the mace" after washing eyes and face do not amount to a "serious medical need"); *Foote v. Houi,* No. 03 C 50001, 2004 WL 2901039 at *2 (N.D. Ill. Dec. 14, 2004) ("While [plaintiff] experienced some obvious discomfort from coming in contact with pepper spray, he has not identified any serious medical condition that was either caused, or aggravated, by the spray."); *Bonnin v. Eau Claire County,* No. 03-C-0065-C, 2004 WL 67478 at *4 (W.D. Wis. Jan. 13, 2004) ("Exposure to pepper spray is not a serious medical need"); *Trotter v. Kingston*, No. 05-C-1032, 2007 WL 984089, at *6 (E.D. Wis. Mar. 27, 2007) (finding on summary judgment that "the injuries of which [plaintiff] complains in the wake of [being indirectly exposed to pepper spray]-shortness of breath, difficulty in breathing, nausea, and tightness in the chest-are, objectively speaking, relatively minor" and not constitutionally actionable). The Court agrees with the reasoning in these opinions.

Courts outside this circuit have routinely concluded the same. *See, e.g., Blond v. City of Schenectady,* No. 10–CV–0598, 2010 WL 4316810, at *5 (N.D. N.Y. Oct. 25, 2010) (residual effects of chemical agent do not constitute serious medical need); *Strassner v. O'Flynn,* No. 04–CV–6021CJS, 2006 WL 839411, at *8 (W.D. N.Y. Mar. 27, 2006) (exposure to temporary discomfort of pepper spray is not serious medical need); *Hixon v. City of Golden Valley*, No. CIVA 06-1548, 2007 WL 1655831, at *8 (D. Minn. June 7, 2007) ("Indeed, breathing problems are to

be expected after pepper spray is applied, and generally those problems are only temporary. Accordingly, there does not appear to be any reason for officers using pepper spray to assume that the breathing difficulties caused thereby require immediate medical care."); *Censke v. Unknown Ekdahl,* No. 2:08–CV–283, 2009 WL 1393320 (W.D. Mich. May 18, 2009) (plaintiff's complaints of "burning in his nose, lungs, eyes, and skin after being sprayed with chemical agent" do not constitute a serious medical need for purposes of the Eighth Amendment, warranting dismissal); *Britton v. Lowndes County Sheriff's Dept.,* No. 1:04CV160-P-D, 2005 WL 3115525 at *3 (N.D. Miss. Nov. 21, 2005) ("[P]epper spray is specifically designed to prevent serious or permanent injury.").

Here, based on the undisputed evidence, no reasonable jury could find that Boyce suffered from an objectively serious medical condition of which Defendants were aware. First, it is undisputed that Boyce was not directly maced, nor was he even close enough to the initial source of the chemical agent to see the act of spraying occur. Instead, Boyce was exposed to pepper spray only indirectly and in a large, open space – a full-size gymnasium. Second, it is undisputed that shortly after the indirect exposure, Boyce washed off the chemical agent in the gymnasium's bathroom. Barnett, a medical technician, then evaluated by Boyce. Third, it is undisputed that despite Boyce having seen medical professionals on at least seven occasions in the four months following the incident, his medical records do not contain any documented complaints whatsoever about being exposed to pepper spray or any symptoms caused thereby. The only evidence of a condition caused by the indirect exposure to pepper spray of which Defendants were arguably made aware are Boyce's letters to Obaisi describing his complaints. Those letters are terse, stating merely that he was having "trouble breathing" or that his throat and chest "hurt" as a result

of being in a gymnasium where pepper spray was used.    Boyce neglected to mention his allegation that the pepper spray aggravated a prior alleged "cardiovascular" condition.    The Court credits Boyce's complaints, as it must at summary judgment, but the lingering effects of the indirect exposure to pepper spray as described to Defendants by Boyce himself, while perhaps a source of discomfort, were relatively minor and not conditions that a reasonable jury could find so serious that they obviously required a doctor's care.    They are indeed no different from similar conditions caused by exposure to chemical agents that have previously and repeatedly been found not to be of the severity required by *Estelle* and the Seventh Circuit to be constitutionally actionable.

In his Response, Boyce cites to *Greeno v. Daley,* 414 F.3d 645 (7th Cir. 2005), for the purported proposition that his complaints about painful breathing were enough to establish a question of fact, given that pain is subjective and often cannot be verified.    Plaintiff, however, misunderstands *Greeno*.    The court in *Greeno,* relying on *Cooper v. Casey,* 97 F.3d 914, 916-17 (7th Cir. 1996), recognized, unremarkably, that pain is subjective and sometimes unverifiable. *See Greeno,* 414 F.3d at 655.    But the Seventh Circuit did not hold in *Greeno, Cooper,* or elsewhere that merely complaining about pain proves an objectively serious medical condition in all circumstances.    The *Greeno* court emphasized that the condition at issue in *Cooper* was pain itself (caused by an alleged beating) and that the prison denied the inmate pain medication to alleviate it.    *See Cooper,* 97 F.3d at 917.    The court reasoned that on those facts a jury should have decided whether the prisoner's pain was objectively serious.    *Id.*    The *Greeno* court distinguished cases like *Cooper* that are "about pain" from cases where the plaintiff presents with a "particular medical harm" and explained that in the latter cases a plaintiff's own complaints do not necessarily create an issue of fact.    *Id.*    The court cited the effects of ambient smoke on human

health as an example of a "medical harm". *Id.* The harm at issue here – the effect of pepper spray exposure – is similar.

As for *Greeno,* there the defendants conceded that the plaintiff's condition – an esophageal ulcer – was objectively serious. *Id.* at 653 ("the defendants do not dispute, nor could they, that [plaintiff] suffers from an objectively serious medical condition). Moreover, the plaintiff in *Greeno* presented not just with complaints of severe heartburn pain, but also a family history of ulcers and years of frequent blood-tinged vomiting, and his medical records even noted the possibility of an ulcer. *Id.* Therefore, the *Greeno* decision does not stand for the proposition that pain complaints create a triable issue of fact in a context like this one.

Court have consistently held that the lingering effects of exposure to pepper spray are not constitutionally actionable. There is no evidence in this case from which a reasonable jury could conclude that Boyce suffered any unique and serious harm of which Defendants were made aware. Because Boyce did not suffer from a serious medical need that necessitated treatment by a doctor, a jury could not find Defendants Barnett and Obaisi deliberately indifferent for allegedly not providing Boyce with such treatment. Summary judgment on Boyce's deliberate indifference claim is therefore granted in favor of Barnett and Obaisi, and they are dismissed as Defendants from this lawsuit.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, Obaisi's motion for summary judgment [97] is granted in its entirety, and the IDOC Defendants' motion for summary judgment [112] is granted in part and denied in part. Boyce's excessive force claim is dismissed with respect to Defendants Lemke and Brooks. As such, Lemke and Brooks are dismissed as Defendants from this lawsuit. Boyce's claim for deliberate indifference to his medical needs is dismissed in its entirety and Defendants Barnett and Obaisi are dismissed as Defendants from this lawsuit. The only claim remaining in this lawsuit is Boyce's claim of excessive force against Defendant McKnight.

**Dated:** December 15, 2015

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**

27